Marianne BOONE and Ward A. Robinson, Plaintiffs,

v.

BEACON BUILDING CORPORATION, Alan D. Bleznak, Betty Butterfield, Lorraine Flynn, Jefferson National Mortgage Company, Lincoln Federal Savings and Loan Association, Equity Savings and Loan, Barbara Durham, Township of Gloucester, Estate of James Joyce and Carole Houser, Defendants,

and

BEACON BUILDING CORPORATION, Alan D. Bleznak, Betty Butterfield and Lorraine Flynn, Defendants-Third Party Plaintiffs,

v.

ERIAL ESTATES, INCORPORATED and William Bowman, Third Party Defendants.

Civ. A. No. 84–2557.

United States District Court, D. New Jersey.

July 23, 1985.

8.  28 U.S.C. § 1491.

Sandra Ayres, Plainsboro, N.J., Sugarman, Denworth & Hellegers by Robert J. Sugarman, John F. Hellegers, Philadelphia, Pa., for plaintiffs.

Blank, Rome, Comisky & McCauley by Stephen M. Orlofsky, Haddonfield, N.J., for defendant Township of Gloucester.

Tomlin, Clark & Hopkin by John Montemurro, Haddonfield, N.J., for defendant Beacon Building Corp.

Higgins & Slachetka by Joseph Slachetka, Laurel Springs, N.J., for defendant Estate of James Joyce.

Jeffrey I. Baron, Marlton, N.J., for defendant Carole Houser and third party defendants.

J. Gregory Leonard, Morristown, N.J., for defendant Lincoln Federal Savings and Loan Assn.

William J. Sragow, Marlton, N.J., for defendant Jefferson National Mort. Co.

Matthew Segal, Westmont, N.J., for defendant Betty Butterfield.

Joseph Sandone, Haddonfield, N.J., for defendant Lorraine Flynn.

Brandt, Haughey, Penberthy, Lewis & Hyland, Haddonfield, N.J., for defendant Alan Bleznak.

## OPINION

GERRY, District Judge.

This is a case in which plaintiffs have sued builders, realtors and landfill operators on a variety of theories. The plaintiffs purchased a home in the vicinity of a toxic landfill and seek damages against all parties allegedly involved in inducing the purchase.

Only count 1, the civil RICO count, is left in plaintiff's action against the Township. However, numerous co-defendants have cross-claimed against the Township for contribution and indemnification. The Township seeks to get out from under the cross-claims.

Counts 3 to 8 involve state law claims against the various defendants. In the plaintiffs' action against the Township, counts 3, 4, 6 and 7 were dismissed because immunity provisions of the New Jersey Tort Claims Act bar claims against public entities for fraud, breach of warranty, strict liability, and intentional torts, respectively. It is the Township's position that these provisions apply to *any* claims, re-·gardless of whether brought by a plaintiff or by a co-defendant.

The court agrees. There is nothing in the language of the Tort Claims Act that makes a distinction between a complaint and a cross-claim, and it seems unreasonable and unlikely that the Legislature would have barred these types of claims by an injured party only to permit them by a co-tort-feasor. More likely, the Legislature simply did not believe, as a matter of policy, that public entities should be liable at all on these causes of action, period.

Counts 5 and 8 are for negligence and negligent infliction of emotional distress, respectively. In dismissing these claims against the Township, we held that intervening intentional acts of other defendants (or even those of the Township) rendered any negligence on the part of the Township a non-proximate cause of plaintiffs' injuries.

The Township argues, therefore, that to the extent cross-claimants are found liable for these later intentional acts, they cannot logically recover from a party whose acts or omissions do not constitute a legal cause of injury, or, by extension, co-defendants' liability. We agree.

Put another way, the Township and its co-defendants are not *joint* tort-feasors as regards the negligence claims. What we have are two distinct, independent sets of wrongs, not *common* tortious conduct among all the defendants, and contribution is therefore unavailable.

As to count 2, the § 1983 count, the Township observes that none of its co-defendants are subject to liability on this basis and, therefore, have no need for contribution. We agree.

Finally, we come to count 1. Unlike counts 3 to 8, which are governed by the New Jersey contribution scheme, this count is governed by the federal common law of contribution, if there is any.

No case has yet determined, apparently, whether there is a right to contribution under the civil liability provisions of RICO.

The statute, of course, is silent on the issue.

■ Under a federal statute, a right of contribution may arise in one of two ways: either (1) by the express language of a statute or the statute's clear implication, looking to its legislative history, the identity of the class for whose benefit the statute was enacted, and the overall legislative scheme; or (2) through the power of federal courts to fashion a common law of contribution. *Texas Industries v. Radcliff Materials*, 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981).

■ In *Northwest Airlines v. Transport Workers*, 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981), the Court denied a right of contribution under either the Equal Pay Act or Title VII. The Court found that these statutes have a fairly elaborate enforcement mechanism, and that the omission from the statutes of a contribution remedy was probably deliberate. Stressing the very limited power of federal courts to fashion common law, the Court declined to create a right of contribution under these statutes, given the comprehensive nature of the scheme enacted by Congress.

The *Northwest Airlines* case is not dispositive, however. The RICO statute, and particularly its enforcement provisions, are not much like the statutes considered in *Northwest Airlines*. While it is certainly true that none of these statutes were enacted with any mind to benefit potential defendants—a factor considered by the Court in the *Northwest Airlines* case—the far more comprehensive enforcement schemes of the Equal Pay Act and Title VII make the intentions of Congress far clearer there than here.

A statutory scheme much closer to RICO is that presented by the antitrust laws. In particular, both the Clayton Act and the civil provisions of RICO provide for the assessment of treble damages and attorney's fees. The language of the civil RICO provision closely tracks the language of § 4 of the Clayton Act, on which it is undeniably modelled.

Fortunately for our purposes here, the Supreme Court has addressed the question of contribution under the antitrust laws and declined to recognize such a right. *Texas Industries v. Radcliff Materials*, 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981). In that case, the Court noted:

> The very idea of treble damages reveals an intent to punish past, and deter future, unlawful conduct, not to ameliorate the liability of wrongdoers. The absence of any reference to contribution in the legislative history or of any possibility that Congress was concerned with softening the blow on joint wrongdoers in this setting makes examination of other factors unnecessary.

*Id.* at 639, 101 S.Ct. at 2066.

We find this reasoning quite persuasive here. The Court further noted the rather lengthy period of existence of the antitrust laws and stated:

> [T]he continuing existence of this statutory scheme without amendments authorizing contribution is not without significance.

*Id.* at 645, 101 S.Ct. at 2069. Although RICO is a relatively new statute, it is in some ways as old as § 4, because Congress looked to its experience with § 4 in fashioning RICO's civil remedies provision. Accordingly, its refusal to expressly authorize a contribution provision in RICO is not without significance.

One cross-claimant argues that one court has recognized a contribution right in connection with CERCLA, 42 U.S.C. § 9601 *et seq.*, and that as the instant case too involves hazardous wastes, that decision is instructive. We are not persuaded for two reasons. First, the decision on which the cross-claimant relies, *U.S. v. Chem-Dyne Corp.*, 572 F.Supp. 802 (S.D.Ohio 1983), does *not* recognize a right of contribution but is a case dealing with joint and several liability. These are not equivalent concepts.

> [T]he judicial determination that defendants should be jointly and severally liable [does not] suggest that courts also may order contribution, since joint and several

liability simply ensures that the *plaintiffs* will be able to recover the full amount of damages from some, if not all, participants.

*Texas Industries, supra,* 451 U.S. at 646, 101 S.Ct. at 2069 (emphasis added). Second, CERCLA is basically a strict liability statute, and any determination regarding the right to contribution under that statute is not particularly relevant to such a right under the civil provisions of an essentially criminal statute.[1] And the fact that the instant case involves hazardous materials is mere accident and cannot affect a determination of the general right of contribution under the RICO statute.

 The various co-defendants' claims for indemnification must also fail. Indemnification may arise by contract or where a party's liability is merely passive and vicarious and where the party against whom indemnification is sought is the active wrongdoer. Here, there is no evidence of any contractual undertaking on the part of the Township. Furthermore, the only counts on which something akin to vicarious liability might even arguably arise (breach of warranty, strict liability) are those on which the immunity provisions of the Tort Claims Act bar any action against the Township.

██ Co-defendant Beacon Building Corporation seeks leave to file an amended cross-claim. As distinguished from previous cross-claims, which are based entirely on the allegations of the complaint, Beacon Building seeks to allege a different theory of negligence against the Township than the one plaintiffs allege, as well as to allege a claim for nuisance.

The Township claims immunity from suit on these claims under a variety of theories which we need not address. Suffice it to say, that on neither the negligence claim nor the nuisance claim would the Township be a joint tort-feasor liable for contribution.

The negligence alleged is in the selection of a company to operate the Township's landfill and in failure to supervise the company selected.[2] This negligence, even if proved, would not be a proximate cause of the damages alleged by plaintiffs any more than the negligence asserted by plaintiffs. And again, the intervening intentional acts of other defendants (or even the Township's intervening intentional acts) demonstrate the existence of independent, not joint, torts.

This reasoning applies equally to the nuisance claim. And with regard to that claim, since no nuisance claim has been asserted by plaintiffs against Beacon, we have doubts whether such a theory may be asserted as a Rule 13(g) cross-claim, given the language of that Rule. *Cf.* discussion regarding § 1983, *supra.*

██ Lastly, co-defendant Houser argues that her bankruptcy petition, which stays plaintiffs' action against her, also stays disposition of the Township's motion. As we understand the automatic stay provision of the Bankruptcy Act, it only operates in actions where the petitioner is in a *defensive* posture. As regards her cross-claim, Houser is in an offensive posture, albeit her offensive posture is closely tied to her defense of the main action here. We do not believe the Township's motion is stayed.

For all the reasons expressed above, the Township's motion will be granted in its entirety, and Beacon's motion to file an amended cross-claim will be denied. Counsel for the Township shall submit orders on both motions.

---

1. Without in any way stating a position on contribution under CERCLA, we note that such a right is at least arguably to be found implicit in the structure of the liability provision, § 9607.

2. The negligence alleged in the plaintiffs' complaint is in the promotion of real estate development in the vicinity of the landfill.