LOWELL I. WILLIAMS *v.* VISTA VESTRA, INC.

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued March 6—decision released July 17, 1979

*Aaron B. Schless,* with whom, on the brief, was *Howard B. Naylor,* for the appellant (defendant).

*Vincent M. Zanella, Jr.,* for the appellee (plaintiff).

LOISELLE, J.  This appeal is an aftermath of a zoning change in Ridgefield which permitted the defendant to develop a minimum of 240 multifamily units on property on route 35 when the zone was changed by the planning and zoning commission. The plaintiff, Lowell I. Williams, brought an action in damages for a claimed breach of contract for personal services against the defendant, Vista Vestra, Inc.  The defendant filed a counterclaim. Judgment was rendered for the plaintiff on both claims.

Contrary to the defendant's claim, the finding is not subject to correction.  At the time relevant to this action, the plaintiff was a self-employed planning consultant doing business as Real Estate Resources with offices in Ridgefield.  Prior to that, he had been employed as the town planner for the Ridgefield planning and zoning commission, which position he left in June, 1968.  In late July or early August of 1968, the defendant's president and sole stockholder, David Paul, a real estate developer,

contacted the plaintiff with the object of engaging the plaintiff's services in obtaining a zone change for property to be purchased at a later time. David Paul had received degrees in economics, business administration, law and urban planning. He had a development company building multifamily housing as well as a management company operating in the northeastern portion of the United States.

At the first meeting of the parties, David Paul indicated to the plaintiff that he was interested in purchasing a twenty-eight acre parcel of land located in a two acre residential zone for single-family detached dwellings and that he wanted the plaintiff to render services to effect the zone change that would be necessary for the development of multifamily units on this site. They met several times to discuss the terms of a proposed agreement and on September 19, 1968, a written contract was executed, prepared by David Paul's attorney. Pursuant to the agreement, the plaintiff was to attempt to cause a change in the zoning regulations to allow the development of 240 multifamily units on the parcel of land previously mentioned after the defendant had acquired title.

The contract specified that the plaintiff was to submit the proposed zoning amendments to the defendant for approval and in a form satisfactory to the commission. The plaintiff was to be responsible for all expenses and costs incidental to his work. When the contract was presented to the plaintiff for execution, it provided for the development of 240 condominium units on the property. David Paul crossed out "condominium" and substituted "multi-family" for it in the first paragraph. The word "condominium" in a subsequent para-

graph was unchanged. The zoning ordinance at that time made no mention of condominiums as such. The contract further provided that the plaintiff was to receive $2500 when the defendant took fee simple title to the land in question; $2500 on the date of the public hearing on the proposed zone change; and $25,000 upon final approval by non-appealable approval or judgment.

An application for change of zone approved by the defendant was prepared and filed by the plaintiff with the commission on March 18, 1969. It sought a change of zone from residential R-AA to R-5 which would allow fifteen family units per acre. Favorable action on this petition would have allowed 425 units on the site. On May 22, 1969, the planning consultant for the commission recommended the denial of the petition but suggested R-5-1 classification which would allow ten family units per acre. This change would allow the construction of 286 units on the site.

During this time the plaintiff met with property owners in the vicinity of the site, the working committee of the full commission, the superintendent of the school board to discuss the impact of the proposed use on the school system, the conservation commissioner, the first selectman, and other public officials to discuss the proposed use of the land and possible tax benefits. He introduced David Paul and members of his staff to the commission members at one of the working meetings. He also met with the defendant's architect, attorneys and engineering consultants. He also prepared a brochure and overlay to be used at the presentation.

On June 3, 1969, a new site plan, topographical survey and an engineering report were submitted.

There were informal discussions and an exchange of ideas concerning the development of the property with multifamily units at several meetings between the plaintiff and the defendant and the commission. These discussions ultimately resulted in David Paul's letter of August 6, 1969, to the commission requesting that the petition for zone change be amended from R-5 to R-5-1.

During the summer of 1969, the plaintiff aspired to be a nominee for a position on the planning and zoning commission in the November election. On August 14, he was endorsed over the then chairman of the commission. The chairman filed for a primary in September and defeated the plaintiff.

The chairman of the commission presided at the public hearing on September 9 on the amended petition for the change of zone to R-5-1. The plaintiff was present at the hearing. The commission acted favorably on the amended petition at that time. An appeal was taken to the Court of Common Pleas and a judgment upholding the action of the commission became final and unappealable on May 5, 1971.

The defendant filed a counterclaim in this action seeking $30,000 from the plaintiff. The defendant alleged that the contract required the plaintiff to absorb all costs in connection with the obtaining of the zoning change.

In his appeal, the defendant raises five issues, claiming (1) that the contract was illegal in that it was against public policy; (2) that the court erred in exclusion of evidence offered; (3) that the plaintiff was obligated to pay expenses in obtaining the zone change as required by the contract; (4) that

the plaintiff's political activity breached an implied covenant not to hinder the performance of the contract; and (5) that the court erred in awarding interest from May 5, 1971, to judgment.

It is difficult to reconcile the defendant's claim that the contract was illegal because it was against public policy with the claim that the plaintiff breached an implied covenant not to hinder the contract by engaging in political activity against the chairman of the commission. One states that the contract was the purchase of political influence which is against public policy and the other states that the political activity of the plaintiff rendered the contract unenforceable because it implicitly prevented or hindered him from using his political influence. If anything, the political activity of the plaintiff makes it clear that whatever David Paul thought he was contracting for, the plaintiff was contracting for the rendering of expert services in presenting a petition for a change of zone in such a manner that all of the various agencies, departments and interested persons in the town would be satisfied and not hinder its approval. The plaintiff's political activity belies the claim that the plaintiff contracted for his political influence. "The principle that agreements contrary to public policy are void should be applied with caution and only in cases plainly within the reasons on which that doctrine rests; and it is the 'general rule . . . that competent persons shall have the utmost liberty of contracting and that their agreements voluntarily and fairly made shall be held valid and enforced in the courts.' *Twin City Pipe Line Co.* v. *Harding Glass Co.*, 283 U.S. 353, 356, 357, 51 S. Ct. 476, 75 L. Ed. 1112; 17 Am. Jur. 2d, Contracts, § 174." *Collins* v. *Sears, Roebuck & Co.*, 164 Conn. 369, 376–77,

321 A.2d 444 (1973). The finding of the court states that no legislative enactment, contract provision or commission regulation was brought to its attention that would have prevented the plaintiff from accepting employment under the contract or would prohibit the plaintiff from appearing before the commission after his services as town planner had terminated. The court was not in error in either respect. The finding indicates that when the plaintiff obtained his party's endorsement at the August caucus, David Paul's attitude toward the plaintiff's candidacy was mollified. At any rate, there was no breach of an implied condition against hindrance or prevention of the execution of the contract as the petition was granted.

The assignment of errors has twenty-one paragraphs of alleged errors in the exclusion of evidence offered by the defendant. The defendant's brief makes general claims relating to the proffered evidence, lumping claims such as "on five occasions" the court refused to permit this line of questioning, either sustaining general objections by plaintiff's counsel or on its own motion on the ground that the written document "speaks for itself." No indication is given as to which of the twenty-one paragraphs in the assignment of errors are concerned. Also, the defendant is claiming that there was an attempt to elicit testimony from the plaintiff as to what studies, plans and proposals were contemplated by the parties and that "this line of questioning was not fully permitted." The defendant makes some references to multiple pages in the appendix but without being specific.

It would unduly prolong this opinion to comment on every excerpt printed in the appendix referred to in the brief. In nineteen pages of testimony

reproduced in the appendix, there are only seven exceptions noted and only these will be considered. Practice Book, 1978, § 288; *State* v. *Lockman,* 169 Conn. 116, 122, 362 A.2d 920 (1975), cert. denied, 423 U.S. 991, 96 S. Ct. 403, 46 L. Ed. 2d 309.

The first two exceptions to the testimony relate to the cross examination of the plaintiff where he was asked his interpretation or his contemplation at the time of the signing of the contract. The plaintiff's attorney objected, the objection was sustained and the court commented that the plaintiff's claim was based on the contract and that the case was based on a contract and not on plaintiff's contemplation. The third exception seems to be involved with the issue of intention of the parties and the court's interpretation of the relation of this issue to the case. "The intention of the parties is to be ascertained from the language used in the contract and that language must be given its common meaning and usage where it can be sensibly applied to the subject matter of the contracts. *Anderson* v. *Pension & Retirement Board,* 167 Conn. 352, 355 A.2d 283." *Scribner* v. *O'Brien, Inc.,* 169 Conn. 389, 399, 363 A.2d 160 (1975). There is no narrative statement or transcript excerpt included in the defendant's brief which lays any foundation for allowing extrinsic evidence contrary to the provisions of the contract other than a statement of counsel. The court was not in error in these rulings. *Ruscito* v. *F-Dyne Electronics Co.,* 177 Conn. 149, 157–61, 411 A.2d 1371 (1979).

The fourth exception relates to evidence concerning the provisions in the contract in which the plaintiff agreed to prepare studies, plans and proposals for the zone change. This ruling will be discussed

below in relation to the defendant's claim that the plaintiff was liable for the expenses incurred in obtaining the zone change.

The last three exceptions relate to testimony referring to condominiums. An objection was sustained on cross examination of the plaintiff to the inquiry into his opinion of whether two and three bedrooms were more desirable for condominium development. Although the word "condominium" was used in the contract, the determination of whether two and three bedroom units were more desirable was not relevant to the issue of whether either "multifamily dwellings" or "condominiums" was the controlling factor of the contract between the parties. The determination of the relevancy of the testimony was within the discretion of the court. *Eason* v. *Williams,* 169 Conn. 589, 591, 363 A.2d 1090 (1975). The next exception was taken to the court's question as to why the word "condominium" was stricken in one part of the contract and not the other. It occurred in David Paul's direct testimony. He was asked if "the amendment to which the contract refers was never in fact submitted to the Zoning Board?" An objection was sustained and exception taken. It is difficult to determine why this exception was taken as, just before this question was asked, David Paul testified that the plaintiff did not submit the petition which was finally approved. There is no indication in the record as to why this exception was taken, and on what grounds; consequently, no error is found. Practice Book, 1978, § 288; *State* v. *Williams,* 169 Conn. 322, 332, 363 A.2d 72 (1975).

The defendant next claims that the court erred in failing to find that the plaintiff was obligated to

pay the expenses reasonably incurred in obtaining the zone change. The defendant admits in its brief that the zoning regulations of the town of Ridgefield only require an application for a change of zone, supported by a copy of the zoning map showing the proposed change, and a written statement signed by the petitioners describing the proposed change and outlining the benefit to the community. The defendant claims, however, that as a practical matter, the applicant must be prepared to answer detailed and far-ranging questions that may require information which can only be supplied by engineers, architects and other professionals. The contract between the parties required the plaintiff to "prepare all necessary studies, plans and proposals" to effect the zone change. The expenses of these services, including appraisal and witness fees, were to be the plaintiff's responsibility. Although the defendant claims that the court did not allow the defendant to present evidence to that effect, in his brief there is only one instance in which evidence on this subject was refused and an exception was noted. The plaintiff on cross examination agreed that it was his responsibility to prepare studies, plans and proposals for a zone change. Thereafter, he was questioned and agreed that a tree expert testified at the hearing that proposals and plans which he described as site plan proposals were presented at the hearing, that a traffic consultant testified, that an architect testified and presented a site plan and that aerial photographs and demographic studies were presented. The plaintiff was then asked if the commission "was concerned with the impact that the change on all those characteristics — on all those characteristics about which testimony was given?" The exception was taken to the sustaining of the objection to this

question. Actually, the defendant was not interrupted when this evidence was presented. The sustaining of the objection was to the plaintiff's opinion as to whether the commission was concerned. The court then commented that "the site plans and those things are not necessary at the zoning hearing on the change of zone or an amendment to the zone and that's simply information to the commission." In its finding, the court concluded that the expenses incurred by the defendant forming the basis of the counterclaim were not the expenses resulting from the zone change but were expenses incurred for planning the proposed project itself. It also found that the zone change was approved on September 9, 1969, and the hearing for approval of the site plan was held March 9, 1971. Although such evidence was voluntarily presented by the defendant at the September 9 hearing, it related to planning, not to the zone change. The court was not in error in not charging the same to the plaintiff.

Aside from the specific errors claimed, the common thread running through the defendant's argument is that because the word "condominium" was replaced in one part of the contract by "multifamily," but it was not replaced in another, an ambiguity was created that required parol evidence. Even assuming that this argument has merit, the court found at the time involved that the Ridgefield ordinance made no mention of "condominium" and that in 1969, chapter 825 of the General Statutes governed the manner in which condominiums could be established. These findings are not challenged. In its conclusions, the court ruled that under R-5-1 of the Ridgefield zoning ordinance, the defendant could have declared all of the 240 multifamily units covered by the contract as condominiums under the

provisions of "The Unit Ownership Act," chapter 825 of the General Statutes in effect in 1969. Although these conclusions are included in the assignments of error, they are not discussed in the brief and are considered abandoned. *Slattery* v. *Maykut,* 176 Conn. 147, 150, 405 A.2d 76 (1978). It is true that the town of Ridgefield is not bound by this ruling as it was not a party to this action. However, as the matter was not briefed, at least the parties to this case cannot claim error now in that interpretation.

The final claim of error is that the court erred in awarding interest from May 5, 1971, until judgment. The court, in its finding which is not attacked, found that the change of zone was granted on September 9, 1969. An appeal from the action of the commission was taken to the Court of Common Pleas. A judgment upholding the action of the commission was rendered. No appeal was taken from this judgment and it became final on May 5, 1971. All that was due on the contract became payable on that day. General Statutes § 37-3a provides for interest "as damages for the detention of money after it becomes payable." The awarding of interest is within the proper discretion of the court. *Scribner* v. *O'Brien,* 169 Conn. 389, 405, 363 A.2d 160 (1975); *Southern New England Contracting Co.* v. *State,* 165 Conn. 644, 664, 345 A.2d 550 (1974).

There is no error.

In this opinion the other judges concurred.