Jay **FRIEDMAN**, Tamiko Shibamura, Shin Nagase, and Realty Group International (U.S.A.), Inc., Plaintiffs,

v.

Robert D. **HARTMANN**, Gerard J. Muro, William P. Farrell, Steven Witten, Joseph R. Daly, Real Estate Plus, Inc., Harley Associates, Ltd., 714 Main Associates, Colony Beach Associates, Newbrite Associates Limited Partnership, and Newbrite Associates, Defendants.

Robert D. **HARTMANN**, Real Estate Plus, Inc., Harley Associates, Ltd., 714 Main Associates and Colony Beach Associates, Third–Party Plaintiffs,

v.

Kathy K. **PRIEST**, Snyder and Priest, and James M. O'Connor, Third–Party Defendants.

No. 91 Civ. 1523 (PKL).

United States District Court, S.D. New York.

March 30, 1992.

Marc Bogatin, New York City, for third-party plaintiffs.

D'Amato & Lynch (Robert E. Kushner, of counsel), Paul, Weiss, Rifkind, Wharton & Garrison (Max Gitter, of counsel), New York City, for third-party defendants Kathy K. Priest and Snyder & Priest.

Ohrenstein & Brown (Mark J. Bunim, of counsel), New York City, for third-party defendant James M. O'Connor.

## ORDER AND OPINION

LEISURE, District Judge:

The third-party defendants in this action have moved, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss the third-party complaint for failure to state a claim upon which relief can be granted. For the reasons stated below, the motion of the third-party defendants is granted.

### Background

#### I. The Main Action

Plaintiffs have brought this action against defendants for fraud; violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68; conspiracy to violate RICO; conversion; breach of contract; money had and received/unjust enrichment; and breach of fiduciary duty, arising out of an aborted real estate transaction. Plaintiffs seek, *inter alia*, compensatory damages of $600,000, treble damages under RICO, and punitive damages.

According to the complaint, at relevant times, plaintiffs Jay Friedman, Tamiko Shi-

bamura, and Shin Nagase were the sole shareholders of plaintiff Realty Group International (U.S.A.), Inc. ("RGI"), a real estate brokerage concern. Defendant Gerard J. Muro was a licensed salesperson employed by RGI. Defendant Robert D. Hartmann ("Hartmann") had an ownership interest in defendant Real Estate Plus, Inc. ("Real Estate Plus"); had an ownership interest in and was president of defendant Harley Associates, Ltd. ("Harley Associates"); was, along with defendant Steven Witten ("Witten"), a general partner of defendant Newbrite Associates ("Newbrite"); and was a partner in defendants 714 Main Associates and Colony Beach Associates. Defendant William P. Farrell ("Farrell") was president of Real Estate Plus. Joseph R. Daly was a general partner of Newbrite Associates Limited Partnership (the "Seller"), a limited partnership existing under the laws of the State of Connecticut.

Plaintiffs allege, *inter alia*, that Hartmann secured their agreement to invest as limited partners in partnerships that were to purchase and develop a number of commercial properties located in Connecticut. These properties included the Newbrite Plaza shopping center, located in New Britain, Connecticut (the "Newbrite Shopping Center"). Plaintiffs allege that defendants Hartmann, 714 Main Associates, Colony Beach Associates, and Witten obtained $600,000 from plaintiffs by knowingly misrepresenting to plaintiffs material facts concerning the purchase of the Newbrite Shopping Center and by actively concealing from plaintiffs material facts concerning the purchase of the Newbrite Shopping Center. According to the complaint, on or about September 11, 1989, the Seller entered into a purchase agreement (the "purchase agreement") with defendants Hartmann and Witten, whom it described as general partners of a partnership to be formed known as Newbrite Associates, pursuant to which the Seller agreed to convey the Newbrite Shopping Center for $10.1 million. Plaintiffs claim that al-

though the purchase agreement expressly represented that neither the Seller nor Hartmann, Witten, or Newbrite dealt with any broker in connection with the sale of the Newbrite Shopping Center other than The Beazley Company and Brooks Properties, Inc., on or about September 11, 1989 (the same day on which the purchase agreement was executed), defendant Farrell—on behalf of Real Estate Plus, of which he was president—executed a written brokerage agreement with the Seller that provided that the Seller would pay at the closing a $1 million brokerage commission to Real Estate Plus. Plaintiffs refer to this agreement as the "Secret Commission Agreement."

Plaintiffs contend that defendants Hartmann and Witten signed the "Secret Commission Agreement," guaranteeing Real Estate Plus's fulfillment of obligations under it; that defendants "actively concealed" the existence and terms of the "Secret Commission Agreement" from plaintiffs; that the existence and terms of the "Secret Commission Agreement" were material facts that defendants had a continuing duty to disclose to plaintiffs; and that this "active concealment" constituted a fraudulent concealment of material facts. According to the complaint, plaintiffs did not learn of the existence of the "Secret Commission Agreement" until approximately May 21, 1990, the day before the scheduled closing on the Newbrite Shopping Center transaction. Plaintiffs further claim that Friedman demanded, on behalf of plaintiffs, that Hartmann advise the Bell Atlantic TriCon Leasing Corporation (the "Lender")[1] of the "Secret Commission Agreement," but that Hartmann refused, after which plaintiffs refused to participate in the purchase of the Newbrite Shopping Center. Plaintiffs seek, *inter alia*, the return of the $600,000 they paid, on the ground that they would not have executed the partnership agreement or paid the $600,000 had they known of the existence

---

**1.** According to the complaint, the Lender had issued a commitment to lend $8.3 million to the limited partnership to be formed by plaintiffs Friedman and Shibamura and defendants Hartmann and Witten. Complaint, ¶ 120.

and terms of the "Secret Commission Agreement" with respect to the purchase of the Newbrite Shopping Center.

## II. The Third–Party Action [2]

After plaintiffs commenced this action, defendants Hartmann, Real Estate Plus, Harley Associates, 714 Main Associates, and Colony Beach Associates filed and served a third-party complaint upon Kathy K. Priest ("Priest"), her law firm ("Snyder & Priest"), and James M. O'Connor ("O'Connor"). The third-party complaint asserts five claims for relief. The first, second, and third claims—for indemnity based on negligence, for indemnity based on breach of contract, and for contribution—are asserted pursuant to Fed.R.Civ.P. 14(a), on the ground that the third-party plaintiffs are entitled to indemnity or contribution from the third-party defendants for any judgment or recovery obtained by plaintiffs against the third-party plaintiffs in the main action.

The third-party plaintiffs allege that they retained the third-party defendants to provide legal advice with respect to, *inter alia*, the Newbrite Shopping Center transaction. The third-party plaintiffs claim that the third-party defendants specifically advised Hartmann that the $1 million brokerage commission that Real Estate Plus was to receive upon the closing of the Newbrite Shopping Center transaction did not have to be disclosed; that the third-party defendants further advised Hartmann that all appropriate disclosure had been made to the limited partners; and that Hartmann relied on this advice in structuring the transaction. The third-party plaintiffs contend that the third-party defendants were negligent in their advice to Hartmann concerning his disclosure obligations and that the negligent legal advice resulted in plaintiffs' lawsuit. The third-party plaintiffs seek to hold the third-party defendants liable for all or part of any judgment that plaintiffs obtain against the third-party plaintiffs in the main action.

The fourth and fifth claims for relief—for negligence and for breach of contract—are direct claims against the third-party defendants and are joined in this action pursuant to Fed.R.Civ.P. 18(a). The third-party complaint alleges that the third-party defendants' negligence was the proximate cause of the failure of the Newbrite Shopping Center transaction to close, resulting in the loss of funds invested in the project as well lost profits. Similarly, the third-party complaint alleges that the third-party defendants' breach of their contractual obligation to render competent legal advice caused the failure of the Newbrite Shopping Center transaction to close, thereby resulting in actual and consequential damages to the third-party plaintiffs, including lost profits.

The third-party defendants have now moved, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss the third-party complaint for failure to state a claim upon which relief can be granted. The third-party defendants argue that (1) as to the RICO claims, the third-party plaintiffs cannot obtain contribution or indemnity because neither remedy exists under RICO; (2) as to the state-law claims asserted by plaintiffs against defendants, defendants cannot obtain contribution or indemnity under Connecticut law for their allegedly intentional misconduct; and (3) because the impleader claims asserted pursuant to Fed.R.Civ.P. 14(a) must be dismissed for failure to state a claim upon which relief can be granted, the fourth and fifth claims for relief against the third-party defendants, which were joined pursuant to Fed.R.Civ.P. 18(a), must also be dismissed.

### Discussion

## I. Motion to Dismiss Pursuant to Rule 12(b)(6)

"In ruling on a motion to dismiss for failure to state a claim upon which relief

---

**2.** For the purposes of the third-party defendants' motion to dismiss, the allegations in the third-party complaint are assumed to be true. *See Easton v. Sundram,* 947 F.2d 1011, 1014–15 (2d Cir.1991), *petition for cert. filed* (Mar. 8, 1992); *Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991).

may be granted, the court is required to accept the material facts alleged in the [third-party] complaint as true, and not to dismiss unless it appears beyond doubt that the [third-party] plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Frasier v. General Electric Co.*, 930 F.2d 1004, 1007 (2d Cir. 1991) (citations and quotation omitted); *accord Castellano v. Board of Trustees of Police Officers' Variable Supplements Fund*, 937 F.2d 752, 754 (2d Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 378, 116 L.Ed.2d 329 (1991). "The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether the [third-party] complaint itself is legally sufficient." *Festa v. Local 3, International Brotherhood of Electrical Workers*, 905 F.2d 35, 37 (2d Cir.1990); *see also Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir.1984) ("The function of a motion to dismiss 'is merely to assess the legal feasibility of the [third-party] complaint, not to assay the weight of the evidence which might be offered in support thereof.'") (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir.1980)).

## II. Contribution or Indemnity on the RICO Claims

The third-party plaintiffs seek contribution or indemnity from the third-party defendants with respect to any judgment the plaintiffs ultimately obtain against the third-party plaintiffs on the RICO claims in the main action. The third-party plaintiffs contend that, if they are held liable to plaintiffs in the main action, they will be entitled to contribution or indemnity from the third-party defendants because the third-party defendants committed legal malpractice by failing to provide competent legal advice regarding the third-party plaintiffs' obligations to disclose the "Secret Commission Agreement."

### A. *Contribution*

■ "Contribution is the proportionate sharing of liability among tortfeasors. Typically, a right to contribution is recognized when two or more persons are liable to the same plaintiff for the same injury and one of the joint tortfeasors has paid more than his fair share of the common liability." *In re "Agent Orange" Product Liability Litigation*, 818 F.2d 204, 207 (2d Cir.1987) (citations and quotations omitted).

The text of the RICO statute does not explicitly permit defendants in civil RICO actions to obtain either contribution or indemnity from third parties, and courts have consistently held that no such right exists. *See, e.g., O & K Trojan, Inc. v. Municipal & Contractors Equipment Corp.*, 751 F.Supp. 431, 433–34 (S.D.N.Y.1990); *Department of Economic Development v. Arthur Andersen & Co.*, 747 F.Supp. 922, 931–32 (S.D.N.Y.1990); *Epstein v. Haas Securities Corp.*, 731 F.Supp. 1166, 1187 (S.D.N.Y.1990); *Minpeco, S.A. v. Conticommodity Services, Inc.*, 677 F.Supp. 151, 154–55 (S.D.N.Y.1988); *In re Olympia Brewing Co. Securities Litigation*, 674 F.Supp. 597, 616–17 (N.D.Ill.1987); *Nelson v. Bennett*, 662 F.Supp. 1324, 1338 n. 23 (E.D.Cal.1987); *Jacobson v. Western Montana Production Credit Association*, 643 F.Supp. 391, 396 (D.Mont.1986); *Seminole Electric Cooperative, Inc. v. Tanner*, 635 F.Supp. 582, 583–84 (M.D.Fla.1986); *Miller v. Affiliated Financial Corp.*, 624 F.Supp. 1003, 1004 (N.D.Ill.1985); *Central Illinois Savings & Loan Association v. DuPage County Bank of Glendale Heights*, 622 F.Supp. 1493, 1498–1500 (N.D.Ill.1985); *Boone v. Beacon Building Corp.*, 613 F.Supp. 1151, 1153–54 (D.N.J.1985).

A number of these courts have applied the reasoning of *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981) (holding that there is no right to contribution under the federal antitrust laws) to the RICO statute. *See, e.g., Minpeco*, 677 F.Supp. at 154–57; *Seminole Electric*, 635 F.Supp. at 583–84. In *Texas Industries*, the Supreme Court stated that "a right to contribution may arise in either of two ways: first, through the affirmative creation of a right of action by Congress, either expressly or by clear implication; or, second, through the power of federal courts to fashion a federal common law of contribution." 451

U.S. at 638, 101 S.Ct. at 2066 (citing *Northwest Airlines, Inc. v. Transport Workers Union*, 451 U.S. 77, 90–91, 101 S.Ct. 1571, 1580, 67 L.Ed.2d 750 (1981) (holding that no right to contribution exists under federal employment discrimination laws)).

The *Texas Industries* Court first addressed the question of whether Congress had created a right to contribution. The Court noted that the federal antitrust laws do not expressly establish a right of action for contribution, and rejected the view that such a right exists by implication under the antitrust laws, especially in light of the availability of treble damages under section 4 of the Clayton Act. 451 U.S. at 639–40, 101 S.Ct. at 2066–67. The *Texas Industries* Court next addressed the question of whether the federal courts were empowered to fashion a federal common-law rule of contribution among antitrust violators. The Court found that contribution does not implicate "uniquely federal interests" of the kind that oblige courts to formulate federal common law, and that although Congress may have intended to allow federal courts to develop governing principles of law with respect to substantive Sherman Act violations, it did not necessarily follow that Congress intended to give courts similar discretion in formulating remedies to enforce the provisions of the Sherman Act or the kind of relief sought through contribution. *Id.* at 640–46, 101 S.Ct. at 2067–70. The Court noted that "the remedial provisions defined in the antitrust laws are detailed and specific," and that " '[t]he presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement.' " *Id.* at 644–45, 101 S.Ct. at 2069 (quoting *Northwest Airlines*, 451 U.S. at 97, 101 S.Ct. at 1584). The Supreme Court therefore concluded that neither the Sherman Act nor the Clayton Act conferred on federal courts the power to formulate the right to contribution that the defendant in *Texas Industries* was seeking. In the instant action, the Court finds that the substantial similarities between the antitrust laws and civil RICO, with respect to both the purposes and remedial measures of the statutes, warrant the application of the *Texas Industries* Court's reasoning to the RICO statute.

Because RICO does not expressly provide for a right of contribution, the Court must consider whether Congress impliedly created such a right. Congress considered the antitrust laws' treble damages provisions when it enacted RICO's treble damages provisions. *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 486–88, 105 S.Ct. 3275, 3280–81, 87 L.Ed.2d 346 (1985). The Supreme Court found in *Texas Industries* that:

> The very idea of treble damages reveals an intent to punish past, and to deter future, unlawful conduct, not to ameliorate the liability of wrongdoers. The absence of any reference to contribution in the legislative history or of any possibility that Congress was concerned with softening the blow on joint wrongdoers in this setting makes examination of other factors unnecessary. We therefore conclude that Congress neither expressly nor implicitly intended to create a right to contribution.

451 U.S. at 639–40, 101 S.Ct. at 2066 (citations omitted). Similarly, the availability of the treble damages remedy in civil RICO actions indicates that Congress intended to punish past, and to deter future, unlawful conduct; Congress certainly did not intend to alleviate the liability of those who violate RICO. Just as Congress did not adopt the Clayton Act for the benefit of participants in a conspiracy to restrain trade, Congress did not adopt civil RICO for the benefit of those who engage in a pattern of racketeering activity. Furthermore, the third-party plaintiffs' status as defendants in the main action indicates that, rather than belonging to the class that Congress intended to benefit in enacting RICO, they are alleged to be "member[s] of the class whose activities Congress intended to regulate for the protection and benefit of an entirely distinct class." *Texas Industries*, 451 U.S. at 639, 101 S.Ct. at 2066 (quotation omitted and emphasis deleted). The Court therefore concludes that Congress did not by implica-

tion create a right to contribution under RICO.

The Court must next consider whether it has the power to fashion a federal common law of contribution. The Supreme Court has recognized that federal courts have the power to formulate federal common law when a federal rule of decision is necessary to protect "uniquely federal interests" or when Congress has given the courts the power to develop substantive law. *Id.* at 640, 101 S.Ct. at 2067 (citing *Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 426, 84 S.Ct. 923, 939, 11 L.Ed.2d 804 (1964) and *Wheeldin v. Wheeler,* 373 U.S. 647, 652, 83 S.Ct. 1441, 1445, 10 L.Ed.2d 605 (1963)).

■ Areas of "uniquely federal interests" are limited to areas such as "those concerned with the rights and obligations of the United States, interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations, and admiralty cases." *Id.* at 641, 101 S.Ct. at 2067 (footnotes omitted). "Regulation of organized crime does not fall within the above categories and, although RICO is federal legislation, individual states also take active roles in fighting organized crime and providing redress for its injured citizens." *Seminole Electric,* 635 F.Supp. at 584; *see also Minpeco,* 677 F.Supp. at 155 ("RICO, although reflecting Congress' interest in providing creative federal responses to the problems of organized crime, does not address a uniquely federal interest."). The Supreme Court reasoned in *Texas Industries* that:

> [A] treble-damages action remains a private suit involving the rights and obligations of private parties. Admittedly, there is a federal interest in the sense that vindication of rights arising out of these congressional enactments supplements federal enforcement and fulfills the objects of the statutory scheme. Notwithstanding that nexus, contribution among antitrust wrongdoers does not involve the duties of the Federal Government, the distribution of powers in our federal system, or matters necessarily

subject to federal control even in the absence of statutory authority.

451 U.S. at 642, 101 S.Ct. at 2068. Similar considerations apply to the RICO statute; contribution among RICO violators does not implicate any the "uniquely federal interests" that oblige the federal courts to formulate federal common law.

In addition, there is no support for the view that Congress empowered the federal courts to create a federal common law remedy of contribution under RICO; rather, as with the federal antitrust laws, "the remedial provisions defined ... are detailed and specific." *Id.* at 644, 101 S.Ct. at 2069. Under 18 U.S.C. § 1964, which outlines the civil remedies available under RICO, Congress has provided that the federal district courts have the power to issue appropriate injunctive relief to prevent and restrain RICO violations; the United States Attorney General may institute civil proceedings; any person "injured in his business or property" by reason of a RICO violation has a private right of action and may recover treble damages and costs, including attorneys' fees; and a final judgment or decree rendered in favor of the United States in any criminal RICO proceeding "shall estop the defendant from denying the essential allegations of the criminal offense in any subsequent civil proceeding brought by the United States." There is nothing in the RICO statute that suggests that Congress intended courts to have the power to supplement the specific remedies enacted with a remedy such as contribution; indeed, " [t]he presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement.' " *Texas Industries,* 451 U.S. at 645, 101 S.Ct. at 2069 (quoting *Northwest Airlines,* 451 U.S. at 97, 101 S.Ct. at 1584).

The Court therefore concludes that there is no right to contribution under the RICO statute. Congress did not create such a remedy, either expressly or by implication, and the federal courts do not have the power to fashion a federal common law

remedy of contribution to supplement those provided by Congress.

## B. *Indemnity*

■ While contribution apportions liability for the plaintiff's damages among two or more tortfeasors, indemnity shifts the entire loss from one tortfeasor who has been compelled to pay it to another. "Indemnity obligations, whether imposed by contract or by law, require the indemnitor to hold the indemnitee harmless from costs in connection with a particular class of claims." *Peter Fabrics, Inc. v. S.S. "Hermes"*, 765 F.2d 306, 316 (2d Cir.1985). The Court concludes that, for the same reasons that there is no right to contribution under RICO, there is also no right to indemnity under RICO. Congress did not create such a remedy, either expressly or by implication, and the federal courts do not have the power to fashion a federal common law remedy of indemnity under RICO. *See, e.g., Central Illinois Savings & Loan Association*, 622 F.Supp. at 1498–1500 (indemnity under RICO not implied by statute and not created under federal common law).

■ Moreover, even if indemnity were available under RICO in certain situations, indemnity would not be available to the third-party plaintiffs in the instant action, in light of the acts that the plaintiffs allege the third-party plaintiffs committed. The predicate acts that plaintiffs allege in the complaint—mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), and financial institution fraud (18 U.S.C. § 1344)—each require a finding of intent on the part of the third-party plaintiffs before they may be held liable to plaintiffs. Indemnity is generally unavailable for intentional misconduct. *See Globus v. Law Research Service, Inc.*, 418 F.2d 1276, 1288 (2d Cir.1969) ("It is well established that one cannot insure himself against his own reckless, wilful or criminal misconduct."), *cert. denied*, 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93 (1970); *Anderson v. Local Union No. 3, International Brotherhood of Electrical Workers*, 582 F.Supp. 627, 633 (S.D.N.Y. 1984) ("Indemnity, like contribution, cannot

be allowed in favor of an intentional tortfeasor. Indeed, the rationale for this rule is even stronger in the case of indemnity, because an intentional tortfeasor receiving indemnification would escape liability for his own deliberate wrongdoing."); W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts*, § 51, at 343 (5th ed. 1984) (it is an "obvious fact that there can be no indemnity in favor of the intentional or reckless tortfeasor"). These general principles of indemnity apply with equal force in the RICO context as in other contexts. *See Department of Economic Development*, 747 F.Supp. at 931 (no right to indemnity under RICO when predicate acts alleged in complaint require finding of intent on part of defendant seeking indemnity).

The Court therefore concludes that the third-party plaintiffs may not seek indemnity from the third-party defendants for any judgment the plaintiffs ultimately obtain against the third-party plaintiffs under RICO on account of the third-party plaintiffs' allegedly intentional misconduct.

## C. *Preemption*

■ The third-party plaintiffs argue that the third-party complaint states a legally sufficient claim for relief for legal malpractice under state law, and that the foregoing analysis with respect to the availability of contribution and indemnity under RICO should not apply to the instant action. The third-party plaintiffs' argument fails, however, because such a claim under state law would be preempted by federal law.

"Under the Supremacy Clause, U.S. Const., Art. VI, cl. 2, state laws that 'interfere with, or are contrary to the laws of congress, made in pursuance of the constitution' are invalid." *Wisconsin Public Intervenor v. Mortier*, —— U.S. ——, 111 S.Ct. 2476, 2481, 115 L.Ed.2d 532 (1991) (quoting *Gibbons v. Ogden*, 9 Wheat 1, 211, 6 L.Ed. 23 (1824) (Marshall, C.J.)). The Supreme Court has articulated the different ways in which federal law may preempt state law; these "are well established and in the first instance turn on congressional intent." *Id.* (citing *Ingersoll–Rand Co. v.*

*McClendon,* —— U.S. ——, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990)).

Federal law may pre-empt state law in any of three ways. First, in enacting the federal law, Congress may explicitly define the extent to which it intends to pre-empt state law. Second, even in the absence of express pre-emptive language, Congress may indicate an intent to occupy an entire field of regulation, in which case the States must leave all regulatory activity in that area to the Federal Government. Finally, if Congress has not displaced state regulation entirely, it may nonetheless pre-empt state law to the extent that the state law actually conflicts with federal law. Such a conflict arises when compliance with both state and federal law is impossible, or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

*Michigan Canners & Freezers Association v. Agricultural Marketing & Bargaining Board,* 467 U.S. 461, 469, 104 S.Ct. 2518, 2523, 81 L.Ed.2d 399 (1984) (citations and quotation omitted).

■ There is "a general presumption against finding preemption of state law." *In re Air Disaster at Lockerbie,* 928 F.2d 1267, 1278 (2d Cir.) (citing *Motor Vehicle Manufacturers Association of United States, Inc. v. Abrams,* 899 F.2d 1315, 1319 (2d Cir.1990)), *cert. denied,* —— U.S. ——, 112 S.Ct. 331, 116 L.Ed.2d 272 (1991). Nonetheless, the Court finds that any claim under state law asserted by the third-party plaintiffs against the third-party defendants for contribution or indemnity as to plaintiffs' RICO claims on the basis of the third-party defendants' allegedly negligent legal advice would be preempted by RICO.

■ As a general matter, an attorney who fails to render competent legal advice to a client may be held liable to that client for damages incurred by the client that were proximately caused by the attorney's failure to provide competent legal advice. *See, e.g., Campagnola v. Mulholland, Minion & Roe,* 76 N.Y.2d 38, 42, 555 N.E.2d 611, 613, 556 N.Y.S.2d 239, 241 (1990) (object of compensatory damages in legal malpractice action, whether founded on theory of tort or contract, is to make injured client whole); *Somma v. Gracey,* 15 Conn.App. 371, 374–75, 544 A.2d 668, 670 (1988) (plaintiff in legal malpractice action must prove, *inter alia,* attorney's breach was the proximate cause of the injuries suffered by the plaintiff).

In the instant action, however, such a recovery under state law for damages incurred by the third-party plaintiffs on account of their allegedly intentional misconduct would be inconsistent with Congress's goals in enacting RICO. The complaint charges the third-party plaintiffs with intentional misconduct—actively concealing the "Secret Commission Agreement"—and alleges as predicate acts mail fraud, wire fraud, and financial institution fraud, all of which require that plaintiffs prove intent before recovering against defendants. The third-party plaintiffs, on the other hand, allege that the third-party defendants were merely negligent in their rendering of legal advice with respect to the third-party plaintiffs' disclosure obligations. If plaintiffs recover against the third-party plaintiffs in the main action on account of the third-party plaintiffs' intentional misconduct, it would contravene the punitive and deterrent purposes of RICO to allow the intentional wrongdoers to shift part or all of their liability to the allegedly negligent third-party defendants. Because such a claim for relief would be inconsistent the statutory scheme enacted by Congress, and therefore would stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, it is preempted by RICO and may not be maintained.

The Court therefore concludes that the third-party plaintiffs' claims for contribution or indemnity with respect to plaintiffs' RICO claims must be dismissed, pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted.

### III. Contribution or Indemnity on the State–Law Claims

The third-party plaintiffs also seek contribution or indemnity from the third-party

defendants with respect to any judgment the plaintiffs ultimately obtain against the third-party plaintiffs on the state-law claims for conversion, breach of contract, money had and received/unjust enrichment, and breach of fiduciary duty, asserted by plaintiffs in the main action. The third-party plaintiffs contend that, if they are found liable to plaintiffs in the main action, they will be entitled to contribution or indemnity because the third-party defendants committed legal malpractice by failing to provide competent legal advice regarding the third-party plaintiffs' obligations to disclose the "Secret Commission Agreement."

### A. *Applicable State Law*

■ In order to determine the legal sufficiency of the third-party plaintiffs' claims for contribution or indemnity against the third-party defendants for any judgment obtained by plaintiffs against the third-party plaintiffs in the main action, the Court must first ascertain which state's substantive law applies to the third-party plaintiffs' claims.[3] "This court is bound by the choice of law rules of the forum state, New York." *Loebig v. Larucci*, 572 F.2d 81, 84 (2d Cir.1978). "In determining the choice of law, New York follows the approach of 'giving controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation.'" *Id.* (quoting *Babcock v. Jackson*, 12 N.Y.2d 473, 481, 191 N.E.2d 279, 283, 240 N.Y.S.2d 743, 749 (1963)). In the instant action, the third-party claims relate to advice allegedly rendered by Connecticut attorneys to their Connecticut clients with respect to a real estate transaction involving a Connecticut shopping center. The Court therefore finds that Connecticut law applies to the third-party plaintiffs' claims for contribution or indemnity for any judgment plaintiffs obtain against the third-party plaintiffs in the main action.

### B. *Contribution Under Connecticut Law*

■ Traditionally, Connecticut followed the common law rule that there is no right to contribution among joint tortfeasors. *Gomeau v. Forrest*, 176 Conn. 523, 409 A.2d 1006, 1007 (1979) ("The common law of this state, unlike that of a number of other jurisdictions, does not permit contribution between joint tortfeasors."). The Connecticut legislature has modified this rule; for example, defendants in negligence actions and product liability actions may seek contribution pursuant to Conn. Gen.Stat. §§ 52–572h and 52–572o. *See also Gionfriddo v. Gartenhaus Cafe*, 15 Conn.App. 392, 397 n. 6, 546 A.2d 284, 288 n. 6 (1988) ("[a]n overwhelming majority of the states, including Connecticut, has abandoned the common law rule prohibiting contribution among joint tortfeasors either by legislative enactment or judicial adoption"). The third-party plaintiffs have not, however, cited any Connecticut authority, nor is the Court aware of any, in support of the proposition that under Connecticut law an allegedly intentional wrongdoer may seek contribution from an allegedly negligent third party.[4]

In the instant action, plaintiffs allege that the third-party plaintiffs actively concealed the existence of the "Secret Commission Agreement" and intentionally obtained the $600,000 from plaintiffs; these intentional acts form the basis of the plaintiffs' state-law claims against the third-party plaintiffs. The third-party plaintiffs, on the other hand, allege that the third-party defendants were merely negligent with respect to the legal advice they rendered regarding the third-party plaintiffs' disclosure obligations, and seek contribution from the third-party defendants for any

---

**3.** The Court expresses no opinion herein as to which state's substantive law applies to the state-law claims asserted by plaintiffs in the main action.

**4.** Moreover, the Court notes that the Connecticut legislature has specifically provided that no

right to contribution exists with respect to claims for breach of trust or breach of other fiduciary obligations, *see* Conn.Gen.Stat. § 52–572h(k), and plaintiffs include a claim for breach of fiduciary duty in their claims against the third-party plaintiffs.

liability plaintiffs obtain from the third-party plaintiffs on the state-law claims. The Court therefore concludes that the third-party plaintiffs have no right to contribution under Connecticut law with respect to any judgment that plaintiffs obtain in the main action against the third-party plaintiffs on plaintiffs' state-law claims.

## C. *Indemnity Under Connecticut Law*

█ Under the law of Connecticut, as elsewhere, an allegedly intentional wrongdoer has no right to seek indemnity from an allegedly negligent third party. *See Preferred Accident Insurance Co. of New York v. Musante, Berman & Steinberg Co.*, 133 Conn. 536, 52 A.2d 862, 865 (1947); W. Keeton, D. Dobbs, R. Keeton, D. Owen, *Prosser and Keeton on the Law of Torts*, § 51, at 343 (5th ed. 1984) (it is an "obvious fact that there can be no indemnity in favor of the intentional or reckless tortfeasor"). The plaintiffs in this action allege that the third-party plaintiffs actively concealed the existence of the "Secret Commission Agreement" and intentionally obtained $600,000 from plaintiffs, and these intentional acts form the basis of plaintiffs' state-law claims against the third-party plaintiffs. In contrast, the third-party plaintiffs allege that the third-party defendants were merely negligent with respect to the legal advice they rendered regarding the third-party plaintiffs' disclosure obligations. The third-party plaintiffs have not cited any Connecticut authority, nor is the Court aware of any, in support of the proposition that under Connecticut law an allegedly intentional wrongdoer may seek indemnity from an allegedly negligent third party. The Court therefore concludes that the third-party plaintiffs may not maintain their claims for indemnity against the third-party defendants for any judgment plaintiffs obtain against the third-party plaintiffs in the main action.

## D. *Agreement Against Public Policy*

█ The third-party plaintiffs argue that the third-party complaint states a legally sufficient claim for relief for legal malpractice under state law, and that the foregoing analysis with respect to the availability of contribution and indemnity for the state-law claims asserted by plaintiffs should not apply to the instant action. The third-party plaintiffs contend that, as part of the third-party defendants' agreement to render legal advice regarding the Newbrite Shopping Center transaction, the third-party defendants are obligated to provide the third-party plaintiffs with contribution or indemnity for any judgment plaintiffs ultimately obtain against the third-party plaintiffs on the state-law claims in the main action. The third-party plaintiffs' argument fails, however, because any such contractual obligation would be void and unenforceable as against public policy.

█ Under the law of Connecticut, as elsewhere, contracts contrary to public policy are void and unenforceable. *See Williams v. Vista Vestra, Inc.*, 178 Conn. 323, 422 A.2d 274, 277 (1979). It is well established that contracts providing for indemnity for losses incurred as a result of intentional misconduct are void and unenforceable as against public policy. *See, e.g., Acosta v. Honda Motor Co.*, 717 F.2d 828, 838 n. 14 (3d Cir.1983) (" 'It is not disputed that insurance against criminal fines or penalties would be void as violative of public policy. The same public policy should invalidate any contract of insurance against the civil punishment that punitive damages represent.' ") (quoting *Northwestern National Casualty Co. v. McNulty*, 307 F.2d 432, 440 (5th Cir.1962)); *Solo Cup Co. v. Federal Insurance Co.*, 619 F.2d 1178, 1187 (7th Cir.) ("It is well settled that '[a] contract of insurance to indemnify a person for damages resulting from his own intentional misconduct is void as against public policy and the courts will not construe a contract to provide such coverage.' ") (quoting *Industrial Sugars, Inc. v. Standard Accident Insurance Co.*, 338 F.2d 673, 676 (7th Cir.1964)), *cert. denied*, 449 U.S. 1033, 101 S.Ct. 608, 66 L.Ed.2d 495 (1980); *Hartford Life Insurance Co. v. Title Guarantee Co.*, 520 F.2d 1170, 1175 (D.C.Cir.1975) ("It is only for the knowledgeable and intentional wrongdoer that the practice of voiding insurance contracts as being contrary to public policy is re-

served."). "This rule is based on the simple principle long ago stated by Judge Cardozo, that 'no one shall be permitted to take advantage of his own wrong.' " *Solo Cup,* 619 F.2d at 1187 (quoting *Messersmith v. American Fidelity Co.,* 232 N.Y. 161, 133 N.E. 432 (1921)). Enforcement of a contractual obligation to provide contribution or indemnity to a party for that party's intentional misconduct would contravene the public policy of deterring and penalizing intentional misconduct through civil lawsuits brought by those persons injured by the misconduct. In the instant action, the enforcement of a contractual obligation on the part of allegedly negligent attorneys to provide contribution or indemnity for damages paid by the attorneys' clients on account of the clients' alleged active concealment of the "Secret Commission Agreement" would be inconsistent with the availability of sanctions against such misconduct.

The Court therefore concludes that the third-party plaintiffs' claims for contribution or indemnity with respect to the plaintiffs' state law claims in the main action must be dismissed, pursuant to Fed. R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted.

## IV. The Independent Negligence and Breach of Contract Claims

In addition to their third-party claims for contribution or indemnity, the third-party plaintiffs have asserted independent claims against the third-party defendants for negligence and breach of contract. The third-party plaintiffs claim that the third-party defendants rendered defective legal advice with respect to the third-party plaintiffs' disclosure obligations regarding the "Secret Commission Agreement." The third-party plaintiffs contend that this allegedly defective legal advice was the proximate cause of the failure of the Newbrite Shopping Center transaction to close, which resulted in the loss of the funds invested in the project as well as of future expected profits.

The third-party plaintiffs concede that these claims for negligence and breach of contract are not third-party claims, but rather are independent claims against the third-party defendants for legal malpractice and are joined in this action pursuant to Fed.R.Civ.P. 18(a). Rule 18(a) provides that "[a] party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal equitable, or maritime, as the party has against an opposing party."

"[O]nce a party has asserted a proper impleader claim, he qualifies under Rule 18(a) to assert any and all additional claims—regardless of whether transactionally related to the impleader claims—he may have against the third-party defendant." 3 Moore's Federal Practice, ¶ 14.-07[2]. In the instant action, the third-party plaintiffs have failed to assert any proper impleader claims against the third-party defendants; and, because the third-party plaintiffs' claims for contribution or indemnity must be dismissed for failure to state a claim upon which relief can be granted, the third-party plaintiffs's independent claims, joined pursuant to Rule 18(a), must be dismissed as well. The Court notes, however, that nothing in this opinion precludes the third-party plaintiffs from asserting these direct claims for legal malpractice against the third-party defendants in Connecticut state court.

### Conclusion

For the reasons stated above, the third-party defendants' motion to dismiss the third-party complaint is granted.

SO ORDERED.